not follow that of the wife under an arbitrary rule; and maintaining the apartment in Portsmouth that his wife might live there, and that he might visit her under leave when the circumstances should permit, must be accepted as a mere incident of his military status, and one entirely subordinate to his duty to the government, when viewed in respect to personal taxation and the restraints of personal liberty, involved in the enforcement of a personal tax, which necessarily would interfere with the free performance of a paramount duty.

The petitioner should be discharged from custody under city and state authority; and it is so ordered.

---

## In re MOCK.

### (District Court, S. D. Mississippi.   June, 1915.)

BANKRUPTCY ☞348—LIENS—STATUTORY LIEN OF LANDLORD.

> Under Civ. Code La. art. 2705, giving a landlord a lien for rent on the movable property of the lessee on the premises, which under subsequent articles is of higher privilege than wage claims, where the landlord of a bankrupt distrained for rent before the bankruptcy, the property being later turned over by the sheriff to the trustee, the latter took it subject to the lien, and only the surplus, if any, is subject to distribution and to the preferred claims of wage-earners.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ☞348.]

In Bankruptcy.   In the matter of Vernon Mock, bankrupt.   On review of order of referee allowing petition of landlord.   Affirmed.

The finding of facts and conclusions of law of Referee West were as follows:

Mrs. Mary D'Antoni, the landlord distrained for rent in arrears in the proper state court of Louisiana, and the sheriff of Concordia parish, in that state, levied upon the property of the bankrupt in his business as a saloon keeper in Vidalia, La., and took possession of the same, and held it until after adjudication of bankruptcy in Mississippi, where the debtor resided, when he delivered it to the trustee in bankruptcy of this court. The controversy here presented is whether the wage-earners shall be paid prior to the landlord, as is provided by section 64 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 563 [Comp. St. 1913, § 9648]), or whether, because of the distraint before the bankruptcy, the landlord is first to be paid. There are not sufficient funds with which to pay both classes of the creditors mentioned; so, if the landlord is first to be paid, nothing will be in hand for the wage-earners, and vice versa.

Section 64 of the act provides what debts shall have priority, and recites the order of distribution; and as to the two classes here mentioned, the wage-earner is entitled to priority over the landlord. The proposition here for determination is one that has caused considerable difficulty in the administration of bankruptcy estates, for it presents the controversy of "priority versus liens." Section 67 of the Act (Comp. St. 1913, § 9651) provides that an

adjudication of bankruptcy within four months shall render invalid liens obtained through legal proceedings within that time. If the lien had in the instant case is one obtained through legal proceedings, then the question here presented is easy of solution, for then the wage-earner would clearly be entitled to priority of payment over the landlord.

The Supreme Court of the United States, in the case of Henderson v. Mayer, 28 Am. Bankr. Rep. 387, 225 U. S. 630, 32 Sup. Ct. 699, 56 L. Ed. 1233, recently held that such a lien had under the statute of Georgia was not obtained through legal proceedings, and was not set aside by the adjudication of bankruptcy. The statutes of Louisiana are as liberal in their protection to landlords as are those of Georgia and Mississippi, referred to in that case. It is my judgment, therefore, that, the lien not being set aside by the adjudication, the property passed to the trustee charged with the lien already fixed upon it by the distraint.

Collier on Bankruptcy (10th Ed.) 1914, p. 885, says: "Many cases seem to hold the broad doctrine that these priorities (costs, taxes, debts due states, wages, etc.) are superior to valid liens. This may be doubted, even where property vested in the trustee is sold free and clear of incumbrances. Section 64b has been construed as referring to the disbursement of the proceeds of unincumbered property, and not to the proceeds of property incumbered by valid liens." On page 886 on the same authority it is said: "It is true that the whole estate is or may be marshaled and administered and liens paid through the trustee. But the rule that the bankrupt's assets come to his trustee charged with all bona fide liens, even if within the four months' period, seems to negative the doctrine of the cases cited at the beginning of this paragraph. The question is often one of extreme difficulty. * * * * The lien creditor is prior in right, and should therefore, unless directly benefited by the acts or disbursements for which priority is claimed, be prior in distribution." Referring to the payment of wages the same authority says, on page 901: "But such claims are not usually prior to valid vested liens." Again, on page 908: "Where a priority is sought under a state statute it must be determined under the laws of that state. If the state law gives a lien, and it continues after bankruptcy, the priority exists in effect, though not in name; the property becomes charged with the lien, and paragraph 64, strictly speaking, does not apply. In connection, too, paragraph 67, on liens avoided by the adjudication, should be consulted. It must be remembered, too, that this subdivision has no application where the state statute gives priority to a class already given priority by the bankruptcy law. The Bankruptcy Act not only controls the state law in case of absolute conflict, but by its express regulation of these priorities excludes the state law altogether. Subject to these exceptions, if the state law gives a priority the same must be recognized in the bankruptcy proceedings. The Bankruptcy Act expressly recognizes the existence of state statutes, and makes them the basis for allowing priority of payment to certain classes of claims. The priority should be clearly evidenced by some statutory provision, or by a judicial rule so definitely established as to have the force of a statute." ·

Article 2705 of the Civil Code of Louisiana provides: "The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased. * * * And in the case of houses and other edifices, it includes the furniture of the lessee, and the merchandise contained in the house or apartment, if it be a store or shop." Articles 2706 and 2707 extend the right to the movables of third parties contained in the premises by their own consent. Article 3190 provides that privileges are either general or special on movables; and article 3191 states what these general privileges are, and gives their rank, among which will be found "the salaries of clerks, secretaries, and other persons," etc., ranking as class No. 6. The landlord's privilege is not mentioned in those articles, as being a general one, for the reason that it is provided for in a subsequent article as being a "special one."

Article 3218 provides: "The right which the lessor has over the products of the estate, and on the movables which are found on the place leased, for his rent is of a higher nature than a mere privilege. The latter is only enforced on the price arising from the sale of the movables to which it applies. It does not enable the creditor to take or keep the effects themselves specially. The lessor, on the contrary, may take the effects themselves and retain them until he is paid." Special privileges, therefore, outrank general privileges; the landlord being in the former class, and a wage-earner in the latter. Article 3254 says: "If the movable property, not subject to any special privilege, is sufficient to pay the debts which have a general privilege on the movables, those debts are to be paid in the following order: * * * 6. Salaries of clerks, secretaries, etc."

A reading of the articles mentioned, together with others upon the same subject, convinces me that the landlord has a lien, or special privilege, as it is called in Louisiana; and if he enforces that special privilege by a distraint, then he has done everything in his power to fix the same. It clearly appears to me, therefore, that Mrs. D'Antoni should be paid in advance of the wage-earners; and, the property having come to the trustee charged with this valid lien, she is to be paid accordingly, instead of as provided in section 64 of the act.

A. H. Geisenberger, of Natchez, Miss., and Calhoun & Reeves, of Vidalia, La., for petitioner.

Charles F. Engle, of Natchez, Miss., opposed.

NILES, District Judge. I find no error in the finding of the referee, and his conclusions are affirmed.